[Cite as *State v. Lawson*, 2020-Ohio-3004.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

      Plaintiff-Appellee,        :

                                        No. 19AP-68
v.                                      :        (C.P.C. No. 17CR-6182)

Phillip Alonzo Lawson,                  :        (REGULAR CALENDAR)

      Defendant-Appellant.       :

---

D E C I S I O N

Rendered on May 19, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond.*

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann.*

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Phillip Alonzo Lawson, appeals the judgment of the Franklin County Court of Common Pleas finding him guilty of 2 counts of felonious assault with firearm specifications, 1 count of improper discharge of a firearm, and 1 count of having weapons under disability. The trial court sentenced Lawson to an aggregate period of 12 years incarceration following a bench trial. On appeal, Lawson asserts 2 assignments of error. First, he argues the trial court admitted testimonial hearsay not subject to cross-examination in violation of the Confrontation Clause. Second, Lawson contends his convictions are against the manifest weight of the evidence.

{¶ 2}  On the evening of October 26, 2017, Ryan Foy and Carrington Sunderland were standing outside the residence at 482 South Richardson Avenue in Columbus.  A group of three men approached Foy and Sunderland from a nearby alley, briefly exchanged words with them, and then one or more of the three men pulled a gun and shot them.  Foy and Sunderland were both wounded.

{¶ 3}  The plaintiff-appellee, State of Ohio, presented evidence at trial suggesting the shooting was prompted by an altercation Foy's girlfriend Leshia Terrell had the previous day with a woman named Jessica Davis.  Terrell encountered Davis when Terrell went to a house owned by her incarcerated father, and discovered that Davis had been using the house to sell and use drugs.  Davis refused to leave when directed, and Terrell called Foy to come help her remove Davis.  Davis then threatened Terrell with a gun.  But she was disarmed by Terrell and Foy; Foy kept Davis' gun and forced her to leave the house.

{¶ 4}  That night, Terrell's Facebook account—an account she shared with Foy—received a threatening Facebook message from the account of "Phil Lawson."  The content of the message prompted Terrell and Foy to investigate who had sent it.  They reviewed Phil Lawson's Facebook page, and discovered photographs showing Davis and Lawson together.  They also discovered photos of Lawson with a very distinctive car—a Chrysler with a custom finish of the Columbus skyline painted on the rear and a modified image of an $100 bill painted on the hood.

{¶ 5}  The following evening, Foy and Terrell went to 482 South Richardson Avenue, the residence of Terrell's sister.  Sunderland sometimes stayed at that house and was there that evening, and he and Foy socialized on the porch.  At some point, Foy noticed a car drive by the house.  He recognized it as the one in the pictures on Lawson's Facebook page, recognized the driver as Lawson, and noted there were two passengers in the car.  Shortly thereafter, Foy and Sunderland saw three men walking up the alley near the house, and Foy observed that at least two of them were carrying firearms.  The men shot at Foy, and both he and Sunderland were struck.  Foy then pulled out the gun he had taken from Davis and shot back at the men, who fled.  A security video from a camera across the street captured the incident.

{¶ 6}  Both Foy and Sunderland required surgical treatment.  Foy identified one of the men who shot him as the man in the photos on Lawson's Facebook page and identified

Lawson as one of the men who shot him from a photo array. Terrell also identified Lawson as the man in the Facebook photos, and both she and Foy identified Lawson in court.

{¶ 7} During the same time period as the shootings, Lawson was under investigation for narcotics trafficking. On October 24, 2017, Columbus Police Detective Aaron Kawasaki obtained a warrant to place a CovertTrack Global Positioning System (GPS) tracking device on Lawson's Chrysler. When Detective Kawasaki learned Lawson had been arrested in connection with the shootings of Foy and Sunderland, he provided GPS data records he received from CovertTrack to the detective who arrested Lawson. Those records were in turn provided to Ohio State Highway Patrol Intelligence Analyst Mark Wong, who is trained in the analysis of phone and GPS information. Wong prepared an animated graphic presentation mapping the GPS coordinates obtained from CovertTrack, which demonstrated multiple pings in the general neighborhood of 482 South Richardson during the hour surrounding the shooting. Wong specifically mapped a ping within several feet of the house at 8:17 p.m. Surveillance video from a house nearby captured what appears to be Lawson's vehicle drive by the house at that same time, and based on that video it appears the shootings occurred at 8:23 p.m.

{¶ 8} Lawson's attorney filed a pretrial motion in limine objecting to testimony about the GPS data, arguing that the information was "Hearsay as defined by Evid.R. 801." (Aug. 29, 2018 Def. Mot. in Limine.) Lawson renewed his objection at trial and also argued the information had not been properly authenticated, the trial court took the motion under advisement, and the State filed a memorandum in response on the final day of trial. The court ruled from the bench:

> THE COURT: For the record, we had a motion in limine filed by defense counsel last week and—asking the Court to exclude the GPS evidence offered by the State. The State responded and said that she should be permitted to introduce testimony of a witness from CovertTrack, and that witness can testify as to the maintenance of the records as business records created and maintained in the ordinary course of business.
>
> Having read the memorandums, I'm inclined to agree, if the State did that, that would be enough to admit the evidence. So unless something new happens, that would be the ruling of the Court, deny the motion in limine if she presents the authentication witnesses. Just for your information.

(Tr. at 389.) The State subsequently offered a notarized certificate from the CovertTrack custodian of records to authenticate the GPS data under Evid.R. 902(8). Lawson's attorney objected, but the trial court concluded the affidavit was sufficient to authenticate and lay a foundation for the records, that the records fit within the business-records exception to the hearsay rule, and also that the records were non-testimonial under the Confrontation Clause. The court admitted the GPS coordinate data as well as the presentation prepared by Wong.

{¶ 9} After the close of the State's case, the defense made an oral motion for judgment of acquittal pursuant to Crim.R. 29, which the trial court denied. The court stated that he found the testimony of Foy to be credible, and "as a result of that and the circumstantial evidence, I'm finding the defendant, Phil Lawson, guilty of those four counts." (Tr. at 506.) Lawson was sentenced on January 2, 2019, and this timely appeal followed. Lawson asserts two assignments of error, and we will address each in turn.

## I. ASSIGNMENT OF ERROR NO. 1: THE TRIAL COURT VIOLATED THE DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES AGAINST HIM BY ADMITTING TESTIMONIAL HEARSAY CONCERNING GPS TRACKING INFORMATION.

{¶ 10} The Confrontation Clause preserves the right of a criminal defendant "to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Under the Confrontation Clause, it is "the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). But as *Crawford* and *Davis* both suggest, before reaching the constitutional question of whether the statement at issue is "testimonial," courts must often make initial determinations regarding the admissibility of the challenged statements under the rules of evidence. Accordingly, we will first address those evidentiary questions and then move on to the constitutional question of the right to confront.

**A.  Evidentiary Issues**

{¶ 11}  Some significant and intertwined questions under the Ohio Rules of Evidence are presented in this case: whether the CovertTrack GPS data is hearsay as defined in Evid.R. 801(C), whether the GPS data was admissible as an exception to the hearsay rule as a record of regularly recorded activity under Evid.R. 803(6), and whether the GPS data was properly authenticated under Evid.R. 901.  We review the trial court's rulings under the Ohio Rules of Evidence for an abuse of discretion.  *See generally State v. Walker*, 10th Dist. No. 17AP-588, 2019-Ohio-1458, ¶ 48.  " 'A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party.' "  *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41, quoting *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16.  Moreover, we are mindful of "the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary."  *E.g., State v. White*, 15 Ohio St.2d 146, 151, (1968), *superseded on other grounds* by statute as stated in *State v. Wilson*, 9th Dist. No. 92CA005396, *108-09 (Oct. 12, 1994).

{¶ 12}  First, we think it plain that the GPS data constitutes an out-of-court "statement" offered into evidence "to prove the truth of the matter asserted"—that the GPS tracker attached to Lawson's Chrysler was in the vicinity of 482 South Richardson during the hour surrounding the shooting, and specifically within several feet of the house at 8:17 p.m., five minutes before the shooting occurred.  The data had no other relevance to the case, because Wong's animated presentation and virtually all of his testimony was simply an interpretation of information he obtained from the CovertTrack system for "understanding and analyzing the data being sent from the device."  (Tr. at 214.) Accordingly, the CovertTrack GPS data, and not Wong's presentation, is the "oral or written assertion" at issue under Evid.R. 801(A), and it is inadmissible hearsay "except as otherwise provided" under Evid.R. 802.

{¶ 13}  The State asserts that the CovertTrack GPS data is admissible hearsay under the exception for "Records of Regularly Conducted Activity," Evid.R. 803(6):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) * * * A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901 (B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

"To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.' " *State v. Glenn*, 12th Dist. No. CA2009-01-008, 2009-Ohio-6549, ¶ 17, quoting *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 171. Moreover, "prior to admission of a business record, the record must be properly identified or authenticated, 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *Glenn* at ¶ 18, quoting Evid.R. 901(A). In short, the question of whether the data qualifies as a "business record" also requires a finding that the data is properly authenticated under Evid.R. 901.

{¶ 14} The trial court admitted the GPS data based on a notarized affidavit from CovertTrack's records custodian. The affidavit in its entirety reads as follows:

I, John Federis, Records Custodian for CovertTrack Group, Inc, first being duly sworn, certify under penalty of perjury as follows:

1. I am over the age of 18 and fully competent to make this affidavit. The facts stated herein are true and correct and are based on my personal knowledge.

2. I am the custodian of the records of CovertTrack Group, whose address is 15600 N. 78th St., Scottsdale, Arizona 85260.

> 3. The Address Report for device 359739071231526 contains data that was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; was kept in the course of the regularly conducted activity; and was made by the regularly conducted activity as a regular practice of CovertTrack Group.
>
> 4. The data contained in the Address Report for device 359739071231526 was created and maintained in the regular and ordinary course of CovertTrack Group's business.
>
> /s John Federis

(Pl.'s Ex. O.)　The defense objected to the admission of the GPS data based on this affidavit, arguing that "the right of confrontation does exist as well as the right to have the State forced to prove that they are, in fact, business records, and I can't cross an affidavit." (Tr. at 437.)　The objection was therefore based both on the Confrontation Clause and on the intertwined questions of whether the affidavit standing alone was sufficient to satisfy the requirement of Evid.R. 803(6) that the status of the data as a business record was shown by "testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), * * *." *See also Glenn* at ¶ 18, quoting Evid.R. 901(A).

{¶ 15} It is somewhat unusual to rely upon an affidavit to authenticate a business record in a criminal trial as opposed to, for example, ruling on a motion for summary judgment. *Compare Cach v. Alderman*, 10th Dist. No. 15AP-980, 2017-Ohio-5597, ¶ 13-19.　And it is a close question whether the affidavit here creates a proper foundation for admission of the GPS data as a business record—the affidavit does not state how the GPS data was created, stored, or retrieved, how the data was tied to the GPS device that was attached to Lawson's Chrysler, or how the data was transmitted to the CovertTrack internet portal.　It does not identify the person responsible for the transcription, identification, confirmation, and collection of the data.　And it does not contain any "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result," such that is a statement "of authentication or identification conforming with the requirements of this rule."　Evid.R. 901(B) and (B)(9).　If the CovertTrack records custodian had testified or had provided a more thorough affidavit, these matters could have been explored more fully.　And while there was some discussion

of calling the records custodian as a witness by remote digital video, *see* Tr. at 431-39, the GPS data was found to be an admissible business record by the trial court based simply on the affidavit.

{¶ 16} Despite all these concerns, we are constrained by our deferential standard of review on questions under the Ohio Rules of Evidence. We cannot say that in this bench trial the trial court abused its wide discretion under those rules allowing the GPS data to be presented. But we do not end our analysis, because the Confrontation Clause of the Sixth Amendment to the United States Constitution requires a less deferential and more thorough analysis of the trial court's decision to admit the GPS data.

## B. Testimonial statements and the right to confrontation

{¶ 17} As questions regarding the status of the GPS data under the rules of evidence have been resolved in favor of admissibility, we move on to the primary question at issue in a confrontation analysis—whether the hearsay statement at issue is "testimonial." In *Crawford*, the United States Supreme Court suggested that business records are "by their nature" nontestimonial. *Crawford* at 56. And subsequently in *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, ¶ 82, the Supreme Court of Ohio held business records "are not 'testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.' "

{¶ 18} But after *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the analysis became more complicated. In that case, the items of evidence at issue were reports by a company that provided forensic analysis on seized substances to establish whether they were illegal; the United States Supreme Court held that despite the fact that the records were kept in the regular course of the company's business, the results of forensic drug testing were testimonial—they were requested by the police and prepared for presentation at trial, and were therefore subject to exclusion under the Confrontation Clause:

> Respondent also misunderstands the relationship between the business-and-official-records hearsay exceptions and the Confrontation Clause. As we stated in *Crawford*: "Most of the hearsay exceptions covered statements that by their nature were not testimonial--for example, business records or statements in furtherance of a conspiracy." Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because--having been created for the

> administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial--they are not testimonial. *Whether or not they qualify as business or official records, the analysts' statements here--prepared specifically for use at petitioner's trial--were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.*

(Emphasis added, citations omitted.) *Id.* at 324. Because the analyst who created the records did not testify and was not subject to cross-examination, the forensic analysis was inadmissible as violative of the Confrontation Clause.

{¶ 19} Thereafter, in *Bullcoming v. New Mexico*, 564 U.S. 647, 663-65 (2011), the Court held that admission of the report of a defendant's blood-alcohol level violated the defendant's right to confront the analyst who prepared the report. The Court held that the report was testimonial because it was a statement made in order to prove a fact at defendant's criminal trial, and that the testimony of a substitute analyst who did not perform or observe the reported test did not satisfy the right to confrontation. The lower court had held that surrogate testimony was "adequate to satisfy the Confrontation Clause in this case because [the actual analyst] 'simply transcribed the resul[t] generated by the gas chromatograph machine,' presenting no interpretation and exercising no independent judgment," and that the defendant's "true accuser" was "the machine, while [the testing analyst's] role was that of 'mere scrivener.' " *Id.* at 659-60. The Court rejected that argument, noting that the surrogate analyst's testimony "reported more than a machine-generated number," and that the surrogate could not convey what the original analyst knew and observed, or expose any lapses or inaccuracies by the original analyst. *Id.* at 660.

{¶ 20} Most recently, in *Williams v. Illinois*, 567 U.S. 50 (2012), a plurality of the Court held that the petitioner's right to confrontation was *not* violated where a forensic specialist testified at a bench trial that she matched a DNA profile produced by an outside laboratory to a profile the state lab produced using a sample of petitioner's blood. The *Williams* plurality concluded that the forensic specialist's testimony was not offered for the truth of the matter asserted and was therefore admissible—which it stated is "entirely consistent with *Bullcoming* and *Melendez-Diaz.*" *Id.* at 79 (plurality opinion).

{¶ 21} Finally, we observe that the Supreme Court of Ohio has examined the interplay of authentication, hearsay and the Confrontation Clause, and held that the failure

to properly authenticate business records can have the effect of admitting testimonial hearsay that would violate the defendant's confrontation rights.  In *State v. Hood*, 135 Ohio St.3d 135, 2012-Ohio-6208, the court concluded that a police officer's analysis of location data based on cell tower pings was inadmissible under both the Ohio Rules of Evidence and the Confrontation Clause, because the records were admitted at trial without proper authentication by "a custodian of the record or by any other qualified witness."  *Id.* at ¶ 40.  The court held:

> [T]he cell-phone records in this case were not authenticated as business records, and that fact affects their status in regard to the Confrontation Clause. *If the records had been authenticated, we could be sure that they were not testimonial, that is, that they were not prepared for use at trial.* Without knowing that they were prepared in the ordinary course of a business, among the other requirements of Evid.R. 803(6), we cannot determine that they are nontestimonial. We thus find that the admission of the records in this case was constitutional error.

(Emphasis added.)  *Id.* at 42.

{¶ 22} In contrast to rulings under the Ohio Rules of Evidence, trial court rulings that implicate the Confrontation Clause are reviewed de novo.  *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97, citing *State v. Hymore*, 9 Ohio St.2d 122, 128(1967), and *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir.2010).  But even in cases where the defendant has established a violation of rights under the Confrontation Clause, the Supreme Court of Ohio has consistently applied a harmless-error analysis to determine whether the issue prejudiced the defendant.  *See McKelton* at ¶ 192, quoting *Harrington v. California*, 395 U.S. 250, 254, (1969), citing *Schneble v. Florida*, 405 U.S. 427, 432 (1972) (where " 'there is [no] reasonable possibility that the improperly admitted evidence contributed to the conviction,' * * * alleged confrontation error was harmless beyond a reasonable doubt"), and *Hood* at ¶ 50 (holding that "admission of the cell-phone records did not contribute to Hood's conviction and that their admission was harmless beyond a reasonable doubt").

{¶ 23} Here, in addition to admitting the GPS data under the Ohio Rules of Evidence, the trial court held that the records were nontestimonial:

> THE COURT: Well, I agree with the State on this. I think it's admissible under the business records under 902, and it was

> not created to be presented at trial. I don't think it's—it's non-testimonial. Therefore, cross-examination doesn't come into play. I think it can be admitted at this point without another witness, so your objections are noted.

(Tr. at 439.)

{¶ 24} As we indicated in our discussion of the GPS data in the context of the rules of evidence, we believe it at least to be a debatable question whether the affidavit properly established them to be business records. But even if they are business records and therefore admissible hearsay under the Ohio Rules of Evidence, under *Melendez-Diaz* and the cases that have followed it, such records remain "testimonial" if they were created "for the purpose of establishing or proving some fact at trial." *See, e.g.*, *Melendez-Diaz* at ¶ 324. And in this case, creation of data for the purpose of proving a fact at trial is the very nature of CovertTrack's business—the company's website states that its function is creating "innovative, specialized tools for GPS tracking, bait vehicles, audio surveillance, and video surveillance * * * partnered with government organizations and police agencies across the country to enable effective and secure covert investigations." CovertTrack.com, https://corporate.coverttrack.com/about (accessed Apr. 24, 2020).

{¶ 25} The GPS information here is easily distinguished from the information commonly used by cell-phone companies. *Compare id. with United States v. Flores*, 6th Cir. No. 13-5763, 2014 U.S. App. LEXIS 25282 (Sep. 29, 2014) (admitting T-Mobile cell phone GPS location data kept in the ordinary course of the company's business because it was "not created for trial purposes [and therefore] is non-testimonial"). Here, the placement of the tracking device on Lawson's Chrysler—by a police officer and pursuant to a search warrant—suggests that the GPS data records "were not merely phone records but were instead exhibits prepared especially for trial to prove the commission of a crime." *Hood* at ¶ 36, discussing *United States v. Yeley-Davis*, 632 F.3d 673, 679 (10th Cir.2011). The undisputed nature of the GPS data at issue, as well as the purpose of the business that gathered it, demonstrates that the data generally falls within category of "testimonial statements." This conclusion is fully consistent with the Supreme Court of Ohio's decision in *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 63, which held that "an autopsy report that is *neither prepared for the primary purpose of accusing a targeted individual nor prepared for the primary purpose of providing evidence in a criminal trial is*

*nontestimonial*, and its admission into evidence at trial under Evid.R. 803(6) as a business record does not violate a defendant's Sixth Amendment confrontation rights." (Emphasis added.) *Id.*

{¶ **26**} Given our de novo standard of review on this issue, *see McKelton* at ¶ 97, we conclude that because the state was permitted to admit the records without allowing the defense to confront the witness from CovertTrack and explore its reliability, the admission of the CovertTrack GPS data was erroneous. Nevertheless, we conclude that the error in admitting the GPS data was "harmless beyond a reasonable doubt." *See id.* at ¶ 192 and *Hood* at ¶ 50. While our analysis might be different had this case been tried to a jury, here the record clearly reveals that the trial court rested its judgment not on the GPS data, but almost exclusively on the eyewitness testimony of a victim witness:

> THE COURT: I guess I can boil this down to simply stating that I found the testimony of Ryan Foy, F-O-Y, to be credible, and what his testimony comes down to was that he saw the driver that was Phil, and the three people came up the alley, he recognized Phil from the Facebook.
>
> Did you see Phil with a gun? Yes.
>
> And, again, I found his testimony to be credible; and as a result of that and the circumstantial evidence, I'm finding the defendant, Phil Lawson, guilty of those four counts: two counts of felonious assault, both with firearm specifications; one count of improperly discharging a firearm into a habitation with another three-year firearm specification; and one count of having weapon while under disability.

(Tr. at 505-06.) In this case, the GPS evidence duplicated the properly admitted testimony of Ryan Foy, the properly admitted Facebook photos of Lawson's automobile, and the properly admitted security video that captured the incident. And because we presume regularity in the trial court's decisions, based on the trial court's specific statements on the record it is clear that Lawson was not prejudiced by the lack of cross-examination of the records custodian. Accordingly, we overrule his first assignment of error.

## II. ASSIGNMENT OF ERROR NO. 2: THE VERDICTS OF GUILT AS TO TWO COUNTS OF FELONIOUS ASSAULT WITH FIREARM SPECIFICATIONS, ONE COUNT OF DISCHARGING A FIREARM INTO A HABITATION WITH FIREARM SPECIFICATION, AND ONE COUNT OF HAVING A WEAPON WHILE UNDER DISABILITY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 27} In his second assignment of error, Lawson urges us to conclude that the trial court's judgments of conviction were against the manifest weight of the evidence. When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Appellate courts should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.* at 387, quoting *Martin* at 175.

{¶ 28} In conducting a manifest weight review, an appellate court may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. But in doing so the court must be mindful that the factfinder "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 18, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). We therefore accord great deference to the factfinder's determination of witness credibility, *see, e.g., State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14, and "[m]ere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25.

{¶ 29} Here, Lawson's sole argument in favor of his argument that his conviction is against the manifest weight of the evidence is that the testimony of Foy was not credible. We generally defer to credibility determinations of the trier of fact made during the bench trial, *see, e.g., State v. White*, 10th Dist. No. 15AP-815, 2017-Ohio-810, ¶ 50, and *State v. Person*, 10th Dist. No. 16AP-12, 2017-Ohio-2738, ¶ 54, and here, Lawson has provided no

basis to abandon that deference. Lawson observes that Foy was initially less than forthright about who was responsible for the shooting, that Foy had a felony record, that Foy did not want to testify, had absconded after the first day of trial, and only testified after he was arrested for violating his probation. But all of this information was well-known to the trial court, and the court took it into account when evaluating Foy's demeanor and testimony. We cannot say that this is the exceptional case when the evidence weighs heavily against Lawson's conviction, and overrule his second assignment of error.

{¶ 30} For all these reasons, Lawson's two assignments of error are overruled, and his judgment of conviction is affirmed.

*Judgment affirmed.*

KLATT, J., concurs.
LUPER SCHUSTER, J., concurs separately.

LUPER SCHUSTER, J., concurring.

{¶ 31} I concur in the majority's analysis and disposition of appellant Phillip Lawson's second assignment of error. However, while I concur in the majority's disposition of Lawson's first assignment of error, I write separately to express my disagreement with the majority's analysis as to that assignment of error.

{¶ 32} I agree with the majority that the trial court did not abuse its discretion in finding that the CovertTrack GPS tracking report was admissible under the Ohio Rules of Evidence as a properly acknowledged business record. I disagree, however, with the majority's finding as to whether the GPS tracking report was testimonial despite being a business record. As the majority notes, while business records generally are not testimonial (and thus are not subject to Confrontation Clause limitations), they may be testimonial "if the regularly conducted business activity is the production of evidence for use at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009). Here, the GPS tracking report was not testimonial because it was not created to establish some fact at trial. *See United States v. Flores*, 6th Cir. No. 13-5763, 2014 U.S. App. LEXIS 25282, at *5 (Sept. 29, 2014) ("Because the GPS data itself was not created for trial purposes, that data is non-testimonial and its admission did not violate [the defendant's] right of confrontation."); *see also United States v. Brooks*, 715 F.3d 1069 (8th Cir.2013) (reasoning in part that even though the GPS tracking reports at issue were created for a

law enforcement purpose, they were not testimonial because they were not "created . . . for the purpose of establishing or proving some fact at trial").

{¶ 33} In my view, the placement of the GPS tracking device on Lawson's vehicle as part of a narcotics trafficking investigation does not mean the data recorded was created for the purpose of his trial here for felonious assault and firearm offenses arising from Lawson's shooting of two victims during that police investigation. Additionally, the GPS tracking report was non-testimonial because it was " 'merely [a] computer printout[] of information generated by accepted technology.' " *See Flores* at *5, quoting *Brooks*. Therefore, unlike the majority, I conclude the trial court did not violate the Confrontation Clause by admitting into evidence the CovertTrack GPS tracking report. Consequently, the harmless error analysis is unnecessary.

{¶ 34} For these reasons, I concur separately.

————————————