[Cite as *Columbus v. State*, 2025-Ohio-2408.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 24AP-333<br>(C.P.C. No. 24CV-2865) |
| State of Ohio, | : | (REGULAR CALENDAR) |
| Defendant-Appellant, | : | |
| Ohio Department of Health et al., | : | |
| Defendants-Appellees. | : | |

---

D E C I S I O N

Rendered on July 8, 2025

---

**On brief:** *Zach Klein*, City Attorney, *Richard N. Coglianese*, *Matthew D. Sturtz, Aaron D. Epstein*, and *Micah L. Berman*, for plaintiff-appellee City of Columbus. **Argued:** *Richard N. Coglianese*.

**On brief:** *McTigue & Colombo LLC, Donald J. McTigue*, and *Stacey N. Hauff*; *Campaign for Tobacco-Free Kids*, *Dennis A. Henigan* and *Connor Fuchs*, Amici Curiae for African American Tobacco Control Leadership Council; American Cancer Society Cancer Action Network; American Heart Association; American Lung Association; American Medical Association; Association of Ohio Health Commissioners; Campaign for Tobacco-Free Kids; National LGBTQI+ Cancer Network; Ohio Chapter, American Academy of Pediatrics; Ohio State Medical Association; Parents Against Vaping E-Cigarettes; Preventing Tobacco Addiction Foundation; Public Health Law Center; The Breathing Association; The Center for Black Health and Equity; and Truth Initiative, in support of plaintiffs-appellees.

**On brief:** *Dickinson Wright PLLC*, *Jonathan R. Secrest*, *David A. Lockshaw, Jr.*, and *Kevin D. Shimp*, for appellant State of Ohio. **Argued:** *Jonathan R. Secrest*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP*, *David A. Froling*, *Michael C. Griffaton*, and *Jeffrey Allen Miller*, for Amici Curiae The Ohio Council of Retail Merchants, Ohio Grocers Association, Ohio Energy and Convenience Association, and Ohio Chamber of Commerce in support of appellant.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} After his second veto of R.C. 9.681, Mike DeWine, Governor of Ohio, expressed his aversion to the General Assembly's attempt to preclude all Ohio municipalities from regulating tobacco:

> In the absence of an effective and comprehensive statewide flavored tobacco ban (including menthol) — which is this administration's preferred policy approach — local government bans are essential because they reduce access to flavored tobacco and nicotine alternative products and interrupt the cycle of addiction. The removal of local regulation would encourage youth nicotine addiction and immediately undo years of progress to improve public health, which is why a similar provision was previously vetoed.

(Am. Compl. at 71.) This sort of interaction between state and local regulatory power has long been understood. Horace G. Redington, a delegate to the 1912 Constitutional Convention of Ohio, succinctly explained this interplay to the convention: "In case the state neglects to pass proper police and sanitary regulations, the city may do so, and if the state then passes laws beyond and more strict than the city laws, the city laws are nullified." 2 Smith, *Proceedings and Debates of the Constitutional Convention of the State of Ohio*, 1468 (1913). In overriding the governor's veto and enacting R.C. 9.681, the General Assembly means to preempt local regulation of tobacco.

{¶ 2} Defendant-appellant State of Ohio seeks reversal of a trial court order finding R.C. 9.681 violative of Article XVIII, Section 3 of the Ohio Constitution. Along with the cities of Athens, Barberton, Bexley, Cincinnati, Cleveland, Dublin, Gahanna, Grandview Heights, Heath, Hilliard, Kent, North Ridgeville, Oberlin, Oxford, Reynoldsburg,

Springfield, Toledo, Upper Arlington, Whitehall, and Worthington, plaintiff-appellee City of Columbus (hereinafter referred to as "Columbus") contends its ordinance banning the sale of flavored tobacco products is a valid exercise of its home rule authority.

## I. Facts and Procedural History

{¶ 3} On December 12, 2022, Columbus passed Ordinance 3253-2022 ("ordinance"). The ordinance authorized the Columbus Department of Public Health to enforce the city's tobacco laws and health code, established a system of civil penalties including fines and license revocation for violating tobacco regulations, and banned the sale of flavored tobacco products. Columbus set January 1, 2024 as the effective date of its sales ban. The ordinance cited the need to protect children from the harmful and addictive effects of flavored tobacco products and noted such products disproportionately affect black smokers. Columbus asserted it passed this ordinance to protect the health, safety, and welfare of its residents. The other plaintiffs-appellees likewise passed ordinances regulating tobacco (hereinafter Columbus and its co-plaintiffs collectively referred to as "appellees").

{¶ 4} Just two days after Columbus passed its ordinance, the Senate Ways and Means Committee on December 14, 2022 amended H.B. No. 513 to enact a new section of law in the Revised Code, R.C. 9.681, to prohibit all local regulation of tobacco products. The General Assembly passed Sub.H.B. No. 513 that same day, December 14, 2022. On January 5, 2023, the governor vetoed the bill. The governor's veto message explained:

> Increased tobacco usage is also known as a cause of increased health care costs, including health care costs paid for by the taxpayers of the State of Ohio.
>
> A local government that bans flavored tobacco products, that are often marketed specifically to appeal to youth, may be doing so to discourage youth tobacco use. ... Flavors, including menthol, help mask the harshness of tobacco making it easier for kids to become addicted.

(June 5, 2023 Veto Message.) On June 30, 2023, the General Assembly passed Am.Sub.H.B. No. 33, a budget bill that included R.C. 9.681's prohibition on local regulation of tobacco products. On July 3, 2023, the governor again vetoed the R.C. 9.681 portion of the bill. However, by a House vote on December 13, 2023 and a Senate vote on January 24, 2024, the General Assembly elected to override the governor's second veto of R.C. 9.681.

**{¶ 5}** The text of R.C. 9.681 provides as follows:

(A) As used in this section, "tobacco product" and "alternative nicotine product" have the same meanings as in section 2927.02 of the Revised Code.

(B) The regulation of tobacco products and alternative nicotine products is a matter of general statewide concern that requires statewide regulation. The state has adopted a comprehensive plan with respect to all aspects of the giveaway, sale, purchase, distribution, manufacture, use, possession, licensing, taxation, inspection, and marketing of tobacco products and alternative nicotine products. No political subdivision may enact, adopt, renew, maintain, enforce, or continue in existence any charter provision, ordinance, resolution, rule, or other measure that conflicts with or preempts any policy of the state regarding the regulation of tobacco products or alternative nicotine products, including, without limitation, by:

(1) Setting or imposing standards, requirements, taxes, fees, assessments, or charges of any kind regarding tobacco products or alternative nicotine products that are the same as or similar to, that conflict with, that are different from, or that are in addition to, any standard, requirement, tax, fee, assessment, or other charge established or authorized by state law;

(2) Lowering or raising an age requirement provided for in state law in connection with the giveaway, sale, purchase, distribution, manufacture, use, possession, licensing, taxation, inspection, and marketing of tobacco products or alternative nicotine products;

(3) Prohibiting an employee eighteen years of age or older of a manufacturer, producer, distributor, wholesaler, or retailer of tobacco products or alternative nicotine products from selling tobacco products or alternative nicotine products;

(4) Prohibiting an employee eighteen years of age or older of a manufacturer, producer, distributor, wholesaler, or retailer of tobacco products or alternative nicotine products from handling tobacco products or alternative nicotine products in sealed containers in connection with manufacturing, storage, warehousing, placement, stocking, bagging, loading, or unloading.

(C) In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, resolution, regulation, local law, or other action as being in conflict with this section.

(D) The general assembly finds and declares that this section is part of a statewide and comprehensive legislative enactment regulating all aspects of the giveaway, sale, purchase, distribution, manufacture, use, possession, licensing, taxation, inspection, and marketing of tobacco products and alternative nicotine products. The general assembly further finds and declares that the imposition of tobacco product and alternative nicotine product regulation by any political subdivision is a matter of statewide concern and would be inconsistent with that statewide, comprehensive enactment. Therefore, regulation of the giveaway, sale, purchase, distribution, manufacture, use, possession, licensing, taxation, inspection, and marketing of tobacco products and alternative nicotine products is a matter of general statewide concern that requires uniform statewide regulation. By the enactment of this section, it is the intent of the general assembly to preempt political subdivisions from the regulation of tobacco products and alternative nicotine products.

(E) This section does not prohibit a political subdivision from levying a tax expressly authorized by state law, including the taxes authorized under Chapters 5739. and 5741. or sections 5743.021, 5743.024, 5743.026, 5743.321, 5743.323, and 5743.324 of the Revised Code.

{¶ 6} On April 9, 2024, appellees filed a complaint challenging the constitutionality of R.C. 9.681 and seeking a temporary restraining order, a preliminary injunction, permanent injunctive relief, and a declaratory judgment. Appellees filed an amended complaint on May 9, 2024. The first four causes of action in the amended complaint alleged the state law violates Article XVIII, the Home Rule Amendment to the Ohio Constitution. The fifth cause of action asserted R.C. 9.681 conflicts with a contract between the Ohio Department of Health and the Columbus Department of Public Health. The sixth cause of action claimed R.C. 9.681 as it relates to Am.Sub.H.B. No. 33, the biennial budget bill, runs afoul of the "one-subject" rule of Article II, Section 15(D) of the Ohio Constitution. Lastly,

the seventh and eighth causes of action stated R.C. 9.681 contradicts equal protection of the law as guaranteed in Article I, Section 2 of the Ohio Constitution.

{¶ 7} On April 19, 2024, the trial court held a hearing on appellees' request for a temporary restraining order. The court by oral pronouncement granted the temporary restraining order, thereby prohibiting the state from enforcing R.C. 9.681 pending a full trial on the merits. On May 15, 2024, the state filed a Civ.R. 12(B)(6) motion to dismiss and a motion in limine with the trial court requesting the preclusion of all witness testimony and evidence at trial. On May 16, 2024, the state filed a second motion in limine to exclude the expert testimony of Dr. Robert Crane.

{¶ 8} The trial court held a bench trial on May 17, 2024. At the start of trial, the court overruled both of the state's motions in limine but noted the state's standing objection to the presentation of any evidence. Appellees called four witnesses, with testimony centering on the harmful impact of tobacco on the city's residents and how local regulation complements rather than detracts from the state's regulatory scheme. The state called no witnesses. At the close of trial, the court issued a ruling from the bench. It largely overruled the state's Civ.R. 12(B)(6) motion to dismiss, but granted the motion to dismiss as to the state's co-defendants Dr. Bruce Vanderhoff and the Ohio Department of Health. The court also ruled on the merits in favor of the state on causes of action five, six, seven, and eight, thereby dismissing those counts. Combining causes of action one, two, three, and four, the trial court determined R.C. 9.681 is not a general law and that it therefore unconstitutionally infringes on the home rule powers of appellees. The court granted the motion for permanent injunction on the state's enforcement of R.C. 9.681 against appellees.

{¶ 9} The state timely appealed.

## II. Assignments of Error

{¶ 10} The state assigns the following as errors for our review:

> [I.] The Trial Court erred in finding R.C. 9.681 unconstitutional due to contravention of the Home Rule Amendment of the Ohio Constitution.
>
> [II.] The Trial Court erred in denying Appellant's two motions in limine and permitting Appellees' witnesses to testify at trial.

### III. Analysis

#### A. First Assignment of Error

{¶ 11} The state in its first assignment of error disputes the trial court's holding that R.C. 9.681 contravenes the Home Rule Amendment of the Ohio Constitution.

{¶ 12} The Ohio Constitution vests the legislative power of the state in the General Assembly. Ohio Const., art. II, § 1; *Dayton v. State*, 2017-Ohio-6909, ¶ 29. "When considering the constitutionality of a statute, this court 'presume[s] the constitutionality of the legislation, and the party challenging the validity of the statute bears the burden of establishing beyond a reasonable doubt that the statute is unconstitutional.' " *Dayton* at ¶ 12, quoting *Wilson v. Kasich*, 2012-Ohio-5367, ¶ 18. Appellees, then, bear the burden of proof in this case. *Id.*, citing *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 10 (1989).

{¶ 13} At the same time, the Ohio Constitution grants municipalities independent authority of their own. The Home Rule Amendment provides that "[s]ubject to the requirements of Section 1 of Article V of this constitution, municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Const., art. XVIII, § 3. To determine the exact contours of this constitutional home rule authority, the Supreme Court of Ohio applies the framework of analysis espoused in *Canton v. State*, 2002-Ohio-2005. The application of the *Canton* test factors, however familiar, is not a rote exercise. *Canton*'s analysis is rooted in the text of Article XVIII, Section 3 and consolidates nine decades of case law discerning the meaning and function of the Home Rule Amendment. The *Canton* test, as reordered, asks "whether (1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Mendenhall v. Akron*, 2008-Ohio-270, ¶ 17; *see Canton* at ¶ 9.

{¶ 14} The first question is whether the ordinance is an exercise of police power. Whereas the General Assembly may not constrain a municipality's exercise of self-government authority, a city's use of its police power could be limited by a conflicting and general state law. *See Am. Fin. Servs. Assn. v. Cleveland*, 2006-Ohio-6043, ¶ 23 ("If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-

government within its jurisdiction."). Police power is an inherent sovereignty the government may "exercise whenever public policy in a broad sense demands, for the benefit of society at large, regulations to guard its morals, safety, health, order, or to insure in any respect such economic conditions as an advancing civilization of a highly complex character requires." *Miami Cty. v. Dayton*, 92 Ohio St. 215, 223-24 (1915). In other words, "the police power allows municipalities to enact regulations . . . to protect the public health, safety, or morals, or the general welfare of the public." *Marich v. Bob Bennett Constr. Co.*, 2008-Ohio-92, ¶ 11, citing *Downing v. Cook*, 69 Ohio St.2d 149, 150 (1982).

{¶ 15} Secondly, courts determine whether the state statute is a general law. The Supreme Court once declared it to be necessary but not sufficient to define a general law as one that "operates uniformly throughout the state." *Youngstown v. Evans*, 121 Ohio St. 342, 345 (1929). Instead, it adopted a more fulsome definition of a general law as one that "prescrib[es] a rule of conduct upon citizens generally." *Id.* That same court excluded from its understanding of general laws those imposing "a limitation upon law making by municipal legislative bodies." *Id.* It even envisioned an "extreme case" wherein a state law "provided for a complete prohibition upon municipal legislation" and concluded such a law would "manifestly . . . not be effective to take away the power conferred upon municipalities by the plain provisions of the Constitution." *Id.* at 346. In a later case, the Supreme Court defined "general laws" as "statutes setting forth police, sanitary or other similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations." *W. Jefferson v. Robinson*, 1 Ohio St.2d 113, 118 (1965). The Supreme Court expounded that sections of law "excis[ing] certain of the police powers of local government that have been granted to municipalities by the Constitution . . . are not general laws." *Garcia v. Siffrin Residential Assn.*, 63 Ohio St.2d 259, 271 (1980). "General laws are those enacted by the General Assembly to safeguard the peace, health, morals, and safety and to protect the property of the people of the state." *Linndale v. State*, 85 Ohio St.3d 52, 54 (1998). Consistent with the Supreme Court's nine decades of definitions and applications of the term "general laws" in Article XVIII, Section 3 of the Ohio Constitution, the Supreme Court articulated the *Canton* general law test:

> [T]o constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and

comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

*Canton* at ¶ 21. "In determining whether a statute constitutes a 'general law' for purposes of the Home Rule Amendment, [the Supreme Court] has consistently applied the four requirements laid out in *Canton*." *Dayton*, 2017-Ohio-6909, at ¶ 15, quoting Ohio Const., art. XVIII, § 3.

{¶ 16} Finally, courts query whether the ordinance conflicts with the statute. A state law prevails over a local ordinance only if the police powers employed by the municipality conflict with the police powers exercised by the state. To determine "whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Struthers v. Sokol*, 108 Ohio St. 263 (1923), paragraph two of the syllabus, quoting Ohio Const., art. XVIII, § 3. "No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa. There can be no conflict unless one authority grants a permit or license to do an act which is forbidden or prohibited by the other." *Id.* at 268. The Supreme Court still employs this conflict test. *See*, *e.g.*, *Newburgh Hts. v. State*, 2022-Ohio-1642, ¶ 29.

{¶ 17} We now proceed to apply the *Canton* test to R.C. 9.681 and the Columbus ordinance. As to the first question, the parties agree the ordinance here is a police power regulation rather than an act of local self-government. *See* Ohio Const., art. XVIII, § 3. The ordinance regulates flavored tobacco products with the stated goal of protecting the health of the city's residents. Accordingly, we find the ordinance is an exercise of the city's police power.

{¶ 18} Next, we examine whether R.C. 9.681 is one of the state's "general laws." Ohio Const., art. XVIII, § 3. The relevant text of the Home Rule Amendment is straightforward: "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Const., art. XVIII,

§ 3.  Before the adoption of this provision, the General Assembly determined the bounds of municipalities' regulatory authority.  Our modern constitutional order deliberately abandoned this antiquated state of affairs.  Ever since the adoption of the Home Rule Amendment in 1912, "[t]he power of any Ohio municipality to enact local police regulations is no longer dependent upon any legislative grant thereof . . .  [t]hat power is now derived directly from [Article XVIII, Section 3]."  *W. Jefferson* 1 Ohio St.2d at 115.  "The General Assembly cannot withdraw from municipalities powers expressly conferred upon them by the Constitution."  *Akron v. Scalera*, 135 Ohio St. 65, 66 (1939); *see Fondessy Ents., Inc. v. Oregon*, 23 Ohio St.3d 213, 216 (1986).  "A statement by the General Assembly of its intent to preempt a field of legislation . . . does not trump the constitutional authority of municipalities to enact legislation pursuant to the Home Rule Amendment."  *Am. Fin. Servs. Assn.*, 2006-Ohio-6043, at ¶ 31.

{¶ 19} The parties focus on prongs three and four of the *Canton* general law test, and our analysis will do the same.  To be a general law, R.C. 9.681 must "(3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally."  *Canton*, 2002-Ohio-2005, at ¶ 21.

{¶ 20} R.C. 9.681(B) states "[t]he regulation of tobacco products and alternative nicotine products is a matter of general statewide concern that requires statewide regulation."  Rather than implementing any such statewide regulation of tobacco, R.C. 9.681(B) proclaims "[n]o political subdivision may enact, adopt, renew, maintain, enforce, or continue in existence any charter provision, ordinance, resolution, rule, or other measure that conflicts with or preempts any policy of the state regarding the regulation of tobacco products or alternative nicotine products."  Of course, the Home Rule Amendment already bars municipal regulations that conflict with the general laws of the state. *See* Ohio Const., art. XVIII, § 3.  The statute's concept of a conflict between an ordinance regulating tobacco and the state's tobacco laws, apparently, is the existence of an ordinance regulating tobacco: the General Assembly "declares that the imposition of tobacco product and alternative nicotine product regulation by any political subdivision is a matter of statewide concern and would be inconsistent with that statewide, comprehensive enactment." R.C. 9.681(D).  Congruent with that view, R.C. 9.681(D) manifests "the intent of the general assembly to preempt political subdivisions from the regulation of tobacco products and

alternative nicotine products." The statute nevertheless permits political subdivisions to levy taxes "expressly authorized by state law." R.C. 9.681(E).

{¶ 21} R.C. 9.681 enacts no substantive regulation of tobacco. Although it directs courts to "award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance," all this provision does is place a bounty on any local regulation of tobacco and thereby encourage private enforcement of its preemption claim. R.C. 9.681(C). A bounty provision could hardly be considered a regulation of tobacco. R.C. 9.681 almost exclusively purports to deprive municipalities of their constitutional authority to implement police power regulations of tobacco. The only exception to the statute's derogation of municipal power is the provision claiming to permit municipalities to levy certain taxes—a power already granted by the Home Rule Amendment. *See* R.C. 9.681(E). In the context of the *Canton* general law test, R.C. 9.681 plainly fails to "set forth police, sanitary, or similar regulations," and it "purport[s] only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations." *Canton* at ¶ 21. Furthermore, the law evidently fails to "prescribe a rule of conduct upon citizens generally." *Id.* Considered on its own merits, R.C. 9.681 is not a general law.

{¶ 22} Complicating this analysis, case law has occasionally and to varying degrees incorporated the concept of *in pari materia* into *Canton* general law analyses. *In pari materia* is a tool of statutory construction. As pronounced by Chief Justice John Marshall of the Supreme Court of the United States, "[t]he intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction." *United States v. Wiltberger*, 18 U.S. 76, 95-96 (1820). The Supreme Court of Ohio later concurred with this principle: "When there is no ambiguity, we must abide by the words employed by the General Assembly and have no cause to apply the rules of statutory construction." (Citations omitted.) *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 2017-Ohio-8714, ¶ 15. In fact, courts overstep their authority when they apply the tools of statutory interpretation to an unambiguous statute. *Id.* Like other canons of statutory construction, the *in pari materia* rule applies only if the text of a statute elicits doubt or ambiguity as to its meaning. *Id.* at ¶ 17. A statute is ambiguous if it is " 'capable of bearing more than one meaning.' " *Id.*, quoting *Dunbar v. State*, 2013-Ohio-2163, ¶ 16.

{¶ 23} R.C. 9.681 is unambiguous. The General Assembly is entirely forthright as to its purpose in passing the law: "By the enactment of this section, it is the intent of the general assembly to preempt political subdivisions from the regulation of tobacco products and alternative nicotine products." R.C. 9.681(D). Nor is there doubt as to the definitions of the key terms "tobacco products" or "alternative nicotine products"—the statute explains they have the "same meanings as in section 2927.02 of the Revised Code." R.C. 9.681(A).

> "Tobacco product" means any product that is made or derived from tobacco or that contains any form of nicotine, if it is intended for human consumption or is likely to be consumed, whether smoked, heated, chewed, absorbed, dissolved, inhaled, or ingested by any other means, including, but not limited to, a cigarette, an electronic smoking device, a cigar, pipe tobacco, chewing tobacco, snuff, or snus. "Tobacco product" also means any component or accessory used in the consumption of a tobacco product, such as filters, rolling papers, pipes, blunt or hemp wraps, and liquids used in electronic smoking devices, whether or not they contain nicotine. "Tobacco product" does not include any product that is a drug, device, or combination product, as those terms are defined or described in 21 U.S.C. 321 and 353(g).

R.C. 2927.02(A)(7). " 'Alternative nicotine product' means . . . an electronic smoking device, vapor product, or any other product or device that consists of or contains nicotine that can be ingested into the body by any means, including, but not limited to, chewing, smoking, absorbing, dissolving, or inhaling." R.C. 2927.02(A)(2)(a). The meaning of "alternative nicotine product" does not include "(i) Any cigarette or other tobacco product; (ii) Any product that is a 'drug' as that term is defined in 21 U.S.C. 321(g)(1); (iii) Any product that is a 'device' as that term is defined in 21 U.S.C. 321(h); [or] (iv) Any product that is a 'combination product' as described in 21 U.S.C. 353(g)." R.C. 2927.02(A)(2)(b). Thus, the meaning of R.C. 9.681 is understood by reading the words plainly written in law. The text is not " 'capable of bearing more than one meaning.' " *Clay* at ¶ 17, quoting *Dunbar* at ¶ 16. To reiterate, "in interpreting a statute a court should always turn first to one, cardinal canon before all others." *Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 253 (1992). The United States Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' " (Citations omitted.) *Id.* at 253-54, quoting *Rubin v.*

*United States*, 449 U.S. 424, 430 (1981); *see also Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 27. By the well-established judicial philosophy of both the federal and state supreme courts, a statute drafted with definitive language and unmistakable intent—such as R.C. 9.681—ought not be subject to further interpretation.

{¶ 24} Even if we were to read an unambiguous statute like R.C. 9.681 *in pari materia*, the inconsistent case law on the matter raises more questions than it answers. This is especially so when utilized in the context of the third and fourth prongs of the *Canton* general law test. At times, the court has directly required a statute be read *in pari materia*. *See, e.g., Cleveland v. State*, 2010-Ohio-6318, ¶ 29 ("[T]he court of appeals erred in considering R.C. 9.68 in isolation rather than as part of Ohio's comprehensive collection of firearm laws."). More recent cases have strayed from this directive. In *Cleveland v. State* (unrelated to the 2010 case of the same name), the court considered whether R.C. 4921.25 was a general law. *See Cleveland v. State*, 2014-Ohio-86. The two-sentence statute provided as follows:

> Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, that is engaged in the towing of motor vehicles is subject to regulation by the public utilities commission as a for-hire motor carrier under this chapter. Such an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering, or regulation of entities that tow motor vehicles.

*Id.* at ¶ 5, quoting R.C. 4921.25. The court read R.C. 4921.25 *in pari materia* under the third prong of the *Canton* general law test by concluding the law was an exercise of the state's police power because it "plac[ed] towing companies under the regulation of the PUCO [Public Utilities Commission of Ohio] — including but not limited to the PUCO's traffic regulations governing for-hire motor carriers." *Id.* at ¶ 13. Despite this conclusion, the court proceeded to find the second sentence of the statute "violates the third prong of the *Canton* test by purporting to limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations." *Id.* at ¶ 16. The decision did not explain why the statute as a whole was read *in pari materia*, while the second sentence was interpreted on its own merit. *See also Dayton*, 2017-Ohio-6909, at ¶ 20, 45 (reading contested statutes in isolation and largely eschewing an *in pari materia* approach). Without settled authority

on whether, when, and how to apply the *in pari materia* doctrine in home rule cases, this court opts to spare statutory construction until it becomes necessary to "say what the law is" and discern an ambiguous statute. *State v. Parker*, 2019-Ohio-3848, ¶ 31.

{¶ 25} Our decision to forgo construing R.C. 9.681 as one overarching statute in combination with all state regulations of tobacco is therefore valid, and, in fact, required by the fundamental limits of judicial power. Judges are not legislators, but we would risk usurping the legislative power by sidestepping the clear meaning of a statute and interpreting language which needs no interpretation. Accordingly, because the text of R.C. 9.681 fails the third and fourth prongs of the *Canton* general law test, we maintain it is not a general law.

{¶ 26} Having determined R.C. 9.681 is not a general law, the question of whether the Columbus ordinance and R.C. 9.681 conflict is moot. Thus, pursuant to the Home Rule Amendment, we deem R.C. 9.681 unconstitutional for impermissibly curtailing the independent constitutional authority of municipalities to regulate tobacco.

{¶ 27} Even if we were to put the *Canton* test aside, R.C. 9.681 contravenes the original intent of the Home Rule Amendment. From the time of the 1912 constitutional convention, it has been understood that a general law is one that "affect[s] the welfare of the state as a whole under the police power." *Smith, Proceedings and Debates of the Constitutional Convention of the State of Ohio*, at 1442. In fact, the text of the amendment as it was initially considered included a clause that modified the term "general laws": "Municipalities shall have power to enact and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws, *affecting the welfare of the state as a whole*." (Emphasis added.) *Id*. at 1439. This clause was removed seemingly because some delegates viewed the language as "surplusage," given that the term "general laws" on its own was seen as description enough. *Id*. at 1439, 1474. As one delegate noted, "[y]ou can not have a law unless it does affect the general welfare of the state." *Id*. at 1442. Thus, a general law must both operate uniformly throughout the state and exercise the police, sanitary, or other like regulatory powers of the state. In our case, R.C. 9.681 regulates nothing yet seeks to preempt the field of tobacco policy. This sort of law is and always was invidious to the text and spirit of the Home Rule Amendment.

{¶ 28} The Home Rule Amendment was also designed to protect the right of municipalities to address their particular and local needs. Then as now, the problems that

arise in densely populated cities may vary greatly from those in sparsely populated towns. For example, the delegates considered policies on plumbing and quarantine. Whereas rural sectors of the state may not need such strict regulations in these departments, cities would have a far greater incentive to pass such regulations in order to protect the health of their residents. The delegates discussed how the Home Rule Amendment would permit municipalities to "add to what the state has enacted under the police power . . . because the needs of the municipality are beyond the needs of the state as a whole." *Smith* at 1440. The Home Rule Amendment "does not subtract a particle from the police power of the state, but does give the municipality unquestioned right for local purposes to go further than the general assembly is willing to use its powers." *Smith* at 1440. If the General Assembly did go further than the municipalities in its exercise of police powers, then "that would supersede the local statutes." *Id.* at 1440. Here, appellees passed ordinances to protect their residents from illness and death caused by the consumption of tobacco products. The Home Rule Amendment was adopted to allow municipalities to do precisely this sort of legislating, but the General Assembly through R.C. 9.681 claims the exclusive power to regulate tobacco. If this statute were enforced as written, the state could move to strike down as illegal any city ordinance regulating tobacco. Cities would lose the power to enforce their tobacco laws, both criminal and civil. They would lose authority to keep city parks free of tobacco. They could no longer regulate tobacco marketing. Licensing and zoning of convenience stores that sell tobacco products might be invalidated. Cities could do nothing to stem the sale of flavored tobacco products, no matter the addictive or mortal effects of the tobacco industry's targeted advertising to children or other demographic groups. Although the state retains great discretion in its authority to regulate tobacco, R.C. 9.681 exceeds this discretion by excluding municipalities from issuing their own rules and regulations. The Home Rule Amendment overtly established a role for municipalities in such regulatory matters because they oftentimes face problems the state, as a whole, does not. By prohibiting cities from protecting their residents from the lethal scourge of tobacco use, the statute here undermines the fundamental principle of the Home Rule Amendment that the government closest to the people serves the people best.

{¶ 29} R.C. 9.681 is unconstitutional for its blatant disregard of the Home Rule Amendment. We find the trial court did not err in granting the motion for permanent

injunction on the state's enforcement of R.C. 9.681 against appellees. Accordingly, we overrule the state's first assignment of error.

### B. Second Assignment of Error

{¶ 30} In its second assignment of error, the state contends the trial court erred in denying its motions in limine and permitting appellees to call testifying witnesses at trial. Trial courts exercise significant discretion over evidentiary rulings, and we accordingly reverse such rulings only for an abuse of discretion that materially prejudices the affected party. *State v. Lawson*, 2020-Ohio-3004, ¶ 11 (10th Dist.). Furthermore, the present case involved a bench trial. "[I]n a bench trial, a trial court is presumed to have considered only the relevant, material[,] and competent evidence." *State v. Addison*, 2004-Ohio-5154, ¶ 10 (10th Dist.), citing *State v. Bays*, 87 Ohio St.3d 15, 28 (1999). This presumption may be defeated only by contrary, affirmative evidence from the record. *See State v. Williams*, 2018-Ohio-974, ¶ 27 (10th Dist.).

{¶ 31} Here, the state fails to establish the trial court abused its discretion. We presume the court in conducting the bench trial considered evidence only insofar as it was relevant. The court ruled in the state's favor on every count except the home rule question, which, being a purely legal matter, was properly decided by application of the *Canton* test and without reference to the evidence put on by appellees. Finding no abuse of discretion in the trial court's evidentiary rulings, we accordingly overrule the state's second assignment of error.

## IV. Conclusion

{¶ 32} Having overruled the state's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.

————————————